**BROWN KWON & LAM LLP**
William Brown, Esq. (WB6828)
521 5th Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**IOLANDA MAZZARA,**
*on behalf of herself and others similarly situated*,

**Plaintiff,**

**- against -**

**KILL DARE, CORP., d/b/a ALLURE, and**
**JOSEPH JULIANO a.k.a "Buster"**

**Defendants.**

---

**Civil Action No:**

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff IOLANDA MAZZARA ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, KILL DARE, CORP. d/b/a Allure (hereinafter, "Corporate Defendant") and JOSEPH JULIANO (hereinafter, "Individual Defendant" and together with Corporate Defendant, "Defendants") and alleges as follows:

**<u>INTRODUCTION</u>**

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from

Defendants: (1) unpaid minimum wages, (2) unfully deducted wages, (3) unlawfully retained tips, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid spread-of-hours premium, (4) misappropriated tips, (5) unlawful wage deductions (6) damages for the late payment of wages (6) stautory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

### *IOLANDA MAZZARA*

7.      Plaintiff is an adult who resides in Richmond County, New York.

8.      Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

9.      Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***Defendants***

### KILL DARE CORP

10.     Corporate Defendant KILL DARE, CORP is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 2945 Arthur Kill Road Staten Island, NY 10309 and an address for service of process located at 1482 86th Street, Brooklyn, New York 11228.

11.     At all relevant times, KILL DARE, CORP has done business as Allure.

12.     At all relevant times, KILL DARE, CORP had an annual dollar volume of sales in excess of $500,000.

13.     KILL DARE, CORP is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

14.     At all relevant times, KILL DARE, CORP has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

15.     KILL DARE, CORP applies the same employment policies, practices and procedures to all entertainers at Allure.

### JOSEPH JULIANO

16.     At all relevant times, Individual Defendant JOSEPH JULIANO a.k.a "Buster" has been an owner and operator of Allure and the principal of the Corporate Defendant.

17.     At all relevant times, JOSEPH JULIANO has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Allure.

18.     At all relevant times, JOSEPH JULIANO has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Allure.

19.     At all relevant times, JOSEPH JULIANO has had the power to maintain employment records, including time and/or wage records of employees at Allure.

20.     At all relevant times, JOSEPH JULIANO has been actively involved in managing the day to day operations of Allure.

21.     At all relevant times, JOSEPH JULIANO has had authority over personnel or payroll decisions and employment policies, practices and procedures at Allure.

22.     At all relevant times, JOSEPH JULIANO has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

23.     JOSEPH JULIANO is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

24.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees employed as entertainers at Allure, from the date that is six (6) years prior to the filing of this Class and Collective Action

Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

26.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, overtime wages for all hours worked in excess of forty (40) per workweek; and for unlawfully deducting from Plaintiff and FLSA Collective Members' wages and unlawfully retaining a portion of tips that Plaintiff and FLSA Collective Members earned from customers. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

27.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

28.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

29.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

30.     Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt

employees employed as entertainers at Allure, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

31.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

32.    The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

33.    The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

34.    Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

35.     Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages, (ii) failing to pay the New York State minimum wage, (iii) failing to pay overtime premiums (iv) failing to pay spread-of-hours premiums, (v) unlawfully retaining entertainers' tips, (vi) making improper wage deductions from entertainers' wages (vii) failing to timely pay wages, (viii) failing to provide proper wage notices, and (ix) failing to provide proper wage statements, in violation of the NYLL.

36.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

37.     Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

38.     Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

39.     Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

40.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

41.     On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

42.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

43.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  This is particularly true of entertainers who work for gentleman's clubs, such as Allure, who have traditionally been an exploited workforce.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

44.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a.  Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b.  Whether Defendants paid Plaintiff and Class for all hours worked;

c.  Whether Defendants paid Plaintiff and Class Members at the lawful minimum wage rate;

d.  Whether Defendants improperly deducted wages from Plaintiff and Class Members' pay;

e.  Whether Defendants paid Plaintiff and Class Members the spread-of-hours premium, as required by the NYLL;

f.  Whether Defendants misappropriated tips from Plaintiff and Class Members by keeping a portion of the tips they earned from customers;

g.  Whether Defendants timely paid Plaintiff and Class Members;

h.  Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

i.  Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## **STATEMENT OF FACTS**

45.     Plaintiff was employed by Defendants as an entertainer at Allure, a gentleman's club, located at 2945 Arthur Kill Road, Staten Island, NY 10309 from on or around May 1, 2019 until on or around March 15, 2020.

46.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were employees of Defendants.

47.     Defendants exercised a great deal of control over Plaintiff, and other similarly situated employees' work.  Defendants imposed strict guidelines on Plaintiff and other entertainers.  For example, Defendants told entertainers what their outfits should look like and

what type of shoes to wear.  Defendants required all entertainers, including Plaintiff, to dance on stage according to a stage rotation established by Defendants.  Entertainers were put into the stage rotation and were required to dance at the time their name was called.  When on stage, Defendants controlled where Plaintiff could dance, how she danced, and imposed rules on when and how to remove clothing.  Plaintiff and other entertainers had no control over the songs that were played while they were dancing on stage.  Defendants required entertainers, such as Plaintiff, to go on stage and dance for at least three songs, then move around the floor to collect tips.  Plaintiff could not leave the stage until she was released by the manager.  When not on stage, or performing lap dances/VIP room service, Plaintiff was required to talk to customers, dance on the floor, or swing on the pole.  If Plaintiff was not with a customer or dancing, she would be reprimanded by managers.  Plaintiff was thus required to perform hours of physically exhausting work each work night.

48.     Throughout her employment with Defendants, Plaintiff usually worked 2-3 days per week.  For the first month of her employment she would work from 6:00 p.m. until at the earliest 4:00 a.m., without any breaks.  Thereafter, Plaintiff's shift would begin at 8:00 p.m. and continue until at the earliest 4:00 a.m. without any breaks.  Plaintiff's hours were set by Defendants, and Plaintiff was not permitted to leave early.  Plaintiff therefore worked between twenty (20) and thirty (30) hours for the first month of her employment and between sixteen (16) and twenty-four (24) hours per week thereafter.  Plaintiff's weekly work schedule was set entirely by Defendants.

49.     At all relevant times, Plaintiff, as well FLSA Collective Plaintiffs and Class Members were not paid any wages by Defendants.

50.     Instead, customers would pay Plaintiff gratuities or service charges which were set by the house for dances performed (lap dance or table dance) in the general area of the club or in semi-private rooms ("VIP rooms").  Specifically, customers would pay Plaintiff $20 per song for lap dances and table dances, and $300 per half hour / $600 per hour for VIP room dances.  These rates were set solely by Defendants.

51.     Thus, entertainers were entirely dependent upon customers to earn their pay.  For lap dances and table dances, customers would pay dancers directly if paying cash.  For these payments, Defendants did not inform customers that such payments were not gratuities, and customers have absolutely no reason to believe that the money they pay entertainers is not fully the entertainers to keep.  Moreover, Defendants failed to keep any record of the number of dances performed by entertainers for customers.

52.     Due to the method in which Plaintiff was paid, Plaintiff was subject to a boom or bust cycle based solely on how busy the night was.  Every so often, at most once per month, Plaintiff would earn a fairly substantial amount in a single night.  This was mostly the result of working in the VIP rooms, which Plaintiff was rarely booked for.  Far more often, Plaintiff would not get booked by customers for any services, the result being that Plaintiff wouldn't earn any pay, despite working the entire night.  This occurred quite frequently, at least one night every other week Plaintiff would not earn any pay.  Furthermore, at least once per week Plaintiff would only get booked for lap dances for just one to three songs, earning as little as $20 to $60 for over seven hours of work.   The effect being that, even if payments for lap dances are considered wages, Plaintiff's regular rate was less than both the federal and New York State minimum wage for more than half of all work weeks.

53.     Throughout Plaintiff's employment, Defendants charged Plaintiff, FLSA Collective Plaintiffs and Class Members a number of house fees.  Specifically, Plaintiff, and all other entertainers, were required to pay the DJ $50 per day, the house mom $20 per day as well as house fee of $35 per day.  These fees would be charged regardless of whether Plaintiff made any earnings for the night.   In addition, Defendants would deduct 20% of all credit card earnings, including gratuities, as a kickback.  For VIP Room earnings, Defendants would automatically deduct 20%, from both cash and credit card payments, including gratuities.  Plaintiff understood that she would not be able to work if she did not pay the required fees.  Finally, when Plaintiff was booked in a VIP Room, she would be required to "tip" the hostess $20.

54.     Even in weeks where Plaintiff's regular rate was above the statutory minimum, the above described wage deductions/kickbacks caused Plaintiff's effective hourly rate to fall below the applicable state and federal minimum wage rate.

55.     With respect to VIP room services, customers would pay the fee directly to the host.  If the customer paid in cash, the host would immediately hand over the payment to the entertainer, minus the 20% house fee.  However, if the customer paid with a credit card, Plaintiff would not get paid that night.  Rather, Plaintiff would be given an IOU.  Towards the beginning of her employment, Plaintiff generally had to wait three to four weeks before finally receiving her pay.  However, as she continued to work for Defendants the delay became longer and longer, that by the time of the termination of her employment she was owed more than $15,000, which represented late payments spanning a number of months.

56.     Defendants paid Plaintiff, FLSA Collective Plaintiffs and Class Members entirely in cash.

57.     Defendants failed to keep, record or maintain any records of the number of hours worked by entertainers, including Plaintiff.

58.     Throughout her employment with Defendants, Plaintiff was never paid the spread-of-hours premium for workdays that exceeded ten (10) hours per day.

59.     Throughout her employment with Defendants, Plaintiff did not receive any notices of pay rate or pay day from Defendants, as required under the NYLL.

60.     Throughout her employment with Defendants, Plaintiff did not receive wage statements from Defendants.

61.     Based on her observations and conversations with other entertainers at Allure, all FLSA Collective Plaintiffs and Class Members were subject to the same unlawful policies.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

62.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

63.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

64.     Pursuant to the FLSA, 20 U.S.C. § 206, Plaintiffs and FLSA Collective Plaintiffs were entitled to be compensated at a rate of $7.25 per hour.

65.     Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, to which they are entitled under the FLSA.

66.     Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et seq.*

67.     Defendants unlawfully deducted payments from Plaintiff and FLSA Collective Plaintiffs' wages, which were for the primary benefit of Defendants, causing their pay to fall below the minimum wage in violation of the FLSA.

68.     Defendants unlawfully kept a portion of tips that Plaintiff and Tipped FLSA Collective Members earned from customers, in violation of the FLSA, 29 U.S.C. § 203(m), by charging a 20% house fee on all earnings, including gratuities.

69.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

70.     Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

71.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

72.     As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage, overtime wages and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

73.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

### COUNT II

### <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

74.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

75.     At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

76.     Defendants failed to pay Plaintiff and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

77.     Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiff and the Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from February 2011 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (e) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; (f) $13.00 per hour for all hours worked from December 31,

2017 through December 30, 2018; and (g) $15.00 per hour for all hours worked from December 31, 2018 through the present.

78.     Defendants was not allowed to avail itself of the New York tipped minimum wage rate under the NYLL.

79.     Defendants willfully failed to pay Plaintiff her wages within seven days of the end of the week in which wages were earned, in violation of NYLL § 191.

80.     Due to Defendants' failure to timely pay Plaintiff, Plaintiff is entitled to recover from Defendants, 100% liquidated damages for each individual late payment during the relevant period, as well as reasonable attorneys' fees, costs, and interest.

81.     NYLL § 193 prohibits employers from deducting from employee's wages unless expressly authorized in writing, provided such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

82.     Defendants made deductions from Plaintiff's wages without first obtaining express written authorization in violation of the NYLL.

83.     Defendants have failed to pay Plaintiff and the Class the spread-of-hours premium for each day that the length of the interval between the beginning and end of their workday was greater than ten (10) hours.

84.     Defendants unlawfully retained part of the gratuities received by Plaintiff and Tipped Subclass Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

85.     Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each

employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

86.     Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

87.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

88.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiff and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

89.     Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

90.     As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages due to time-shaving and improper rounding of employees' hours worked, unpaid wages for training time, unpaid spread-of-hours premium, misappropriated tips, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

91.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.  An award of unpaid minimum wage due under the FLSA and NYLL;

e.  An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

f.  An award of liquidated damages resulting from Defendants' failure to timely pay wages, in violation of the NYLL;

g.  An award of unlawfully retained tips due under the FLSA and NYLL;

h.  An award of damages for improper wage deductions due under the FLSA and NYLL;

i.  An award of unpaid spread-of-hours premium due under the NYLL;

j.  An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage; full and proper wages for all hours worked; spread-of-hours premium; improperly deducted wages, and misappropriated tips, pursuant to the FLSA or NYLL;

k.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

l.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

m.  Pre-judgment and post-judgment interest;

n.  Reasonable attorneys' fees and costs of this action;

o.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

p.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

q.  Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  November 2, 2020        Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:    */s/ William Brown*

William Brown, Esq. (WB6828)
521 5th Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

## FLSA CONSENT FORM

I hereby consent to be part of the lawsuit against Kill Dare Corp. d/b/a Allure and Joseph Juliano and any such other Defendants who may be added to the case in the future. I understand that the lawsuit alleges overtime violations under the Fair Labor Standards Act. I hereby give consent to the law firm of Brown Kwon & Lam, LLP to bring this suit on my behalf.

Iolanda Mazzara
First and Last Name (printed)

_Signature_

10/20/20
Date